Lorraine DeMORANVILLE, Appellant,

v.

SPECIALTY RETAILERS, INC., Three Beall Brothers 3, Inc., Palais Royal, Inc. and Susan Bee, Appellees.

No. 14–94–00624–CV.

Court of Appeals of Texas, Houston (14th Dist.).

Aug. 17, 1995.

Rehearing Overruled Oct. 12, 1995.

Robert E. Newey, Houston, for appellant.

Glenn W. Patterson, Houston, for appellees.

Before YATES, FOWLER and DRAUGHN,* JJ.

## OPINION

DRAUGHN, Justice.

This is an appeal from a summary judgment in favor of appellees in an age discrimination case. Appellant brought suit alleging six causes of action against appellees for creating a hostile work environment. The trial court granted summary judgment on all causes of action. In four points of error, appellant only appeals the court's ruling on the age discrimination and intentional infliction of emotional distress causes of action. We affirm the trial court's grant of summary judgment on all intentional infliction of emotional distress claims against all appellees and the age discrimination claims against appellee, Susan Bee. We reverse the trial court's summary judgment on appellant's age discrimination claims against appellees, Speciality Retailers (SRI), Inc., Three Beall Brothers 3, Inc. (Bealls), and Palais Royal, Inc., and remand those claims to the trial court.

Appellant, Lorraine DeMoranville, began working as a buyer for appellee, Palais Royal, in November 1972. She was promoted to Vice President–Divisional Merchandise Manager of Misses Sportswear in September 1980. On December 29, 1988, appellee, Specialty Retailers, Inc. (SRI) purchased Bealls and Palais Royal. In May 1990, SRI merged Palais Royal with Bealls and eliminated some positions. At this time, appellant accepted a demotion to the position of buyer of Activewear–Knit Tops and Main Floor Separates. Appellee, Susan Bee, formerly with Bealls, was named appellant's supervisor. On Octo-

* The Honorable Joe L. Draughn sitting by assignment.

ber 25, 1990, appellant changed positions to buyer of Career Separates, but continued to work under Bee.

Appellant contends her supervisor, Bee, discriminated against her beginning on May 24, 1990. Appellant alleges that Bee "began to criticize and continually complain about [appellant's] work, created a hostile work environment and caused constant stress and strain on [appellant], [by] demeaning her and discriminating against [her] in favor of younger workers." She claims appellees limited her chances for advancement, limited her pay, and applied different standards to her because of her age. Appellee claims that because of this conduct she was "constructively fired." As evidence of this discrimination, appellant contends that Bee was late for meetings or refused to meet with appellant, required appellant to work "after hours," changed the requirements for certain projects in midstream, told appellant that she needed to be "more fashion forward," and yelled at her.

Because of work related stress, appellant's psychologist, Dr. Francisco Perez, recommended she leave work temporarily on April 4, 1991. When her stress level did not decrease, appellant applied for short term disability on April 22, 1991. On May 10, 1991, John C. Chipperfield, Senior Vice President of Human Resources for SRI, allegedly told appellant she was being replaced as buyer and offered her another position in the company. Chipperfield also told appellant that she would be terminated if her leave lasted more than a year.

Appellant did not return to work on April 1, 1992. Therefore, she was automatically terminated after a one year medical leave of absence. She was fired on May 1, 1992. At this time, appellant was 59 years old. On June 2, 1992, she filed a complaint for age discrimination with Equal Employment Opportunity Commission. On the application, she alleged April 1, 1992, as the date of discrimination.

In her original petition, appellant alleged causes of action for: (1) Breach of Contract; (2) Violation of Implied Covenant of Good Faith and Fair Dealing; (3) Intentional Infliction of Emotion Distress; (4) Invasion of Privacy; (5) Prima Facie Tort; and (6) Age Discrimination. Appellees moved for summary judgment on all six causes of action. The trial court granted summary judgment on March 1, 1994, on all causes of action except age discrimination and intentional infliction of emotional distress. On March 3, 1994, the trial court granted final summary judgment on all causes of action.

■ In her first two points of error, appellant contends the trial court erred in granting appellees' motion for summary judgment on the grounds that she failed to timely file her complaint with the Equal Employment Opportunity Commission or the Texas Commission on Human Rights. Under Texas law, a complaint must be filed with the Equal Employment Opportunity Commission or the Texas Commission on Human Rights within 180 days of the alleged violation after the date the alleged unlawful employment practice occurred. TEX.REV.CIV. STAT.ANN. art. 5221k, § 6.01 (Vernon 1987). The time limit for filing a complaint with the Texas Commission on Human Rights is mandatory and jurisdictional. *Schroeder v. Texas Iron Works, Inc.,* 813 S.W.2d 483, 485–86 (Tex.1991). Although the Age Discrimination in Employment Act of 1967, "ADEA," 29 U.S.C. §§ 621–634 has extended the time for filing to 300 days, the Texas time period is not affected. *Pope v. MCI Telecommunications Corp.,* 937 F.2d 258, 264 (5th Cir.1991). Thus, we must determine whether the trial court correctly held that appellant's filing on June 2, 1992 occurred more than 180 days after the alleged discrimination.

■ This court has held that, "[i]n determining when the unlawful employment practice occurred, the focus is on the alleged discrimination *act,* not on the *effects* of the act." *Ridgway's, Inc. v. Payne,* 853 S.W.2d 659, 663 (Tex.App.—Houston [14th Dist.] 1993, no writ). This court followed precedent from the United States Supreme Court which held, "[t]he proper focus is upon the time of the *discriminatory* acts, not upon the time at which the *consequences* of the acts became most painful." *Delaware State College v. Ricks,* 449 U.S. 250, 258, 101 S.Ct. 498, 504, 66 L.Ed.2d 431 (1980) (quoting *Abram-*

*son v. University of Hawaii,* 594 F.2d 202, 209 (9th Cir.1979) (emphasis added)). In making our analysis, we must determine whether the act of terminating appellant for taking a medical leave for more than one year was a consequence of the alleged age discrimination or the final act of age discrimination. We disagree with the trial court reasoning and hold there is at least a fact issue as to whether appellees' termination of appellant was an act of discrimination as opposed to a consequence of the alleged age discrimination.

■ Appellant readily admits that the act of terminating her was not the only alleged discriminatory act. Appellant contends the discrimination began when Bee became her supervisor in May of 1990. She claims that at that point a pattern of discrimination began which did not end until her termination in May 1992. Age discrimination can be a continuous pattern of discrimination as opposed to a single act or decision. *Bruno v. Western Elec. Co.,* 829 F.2d 957, 960–61 (10th Cir.1987). Especially, when the employer hides vital information from the employee that prevents the employee from knowing of the age discrimination, equitable estoppel is recognized to toll the 180 day filing period. *Rhodes v. Guiberson Oil Tools Div.,* 927 F.2d 876, 880 (5th Cir.1991). While we do not apply equitable estoppel to toll the statute of limitations, we find the reasoning in *Rhodes* to be applicable. Appellant could not know that she would not be physically and mentally able to return to work until April 1992. Therefore, appellant did not know that she would actually be terminated from her position until April 1992. These facts distinguish appellant's case from those relied upon by appellant in which the employee knew that they would be terminated but were allowed to remain at their job for a short period of time. Appellant always expected to return to work when she was capable. The decision to terminate appellant was not definite.

In *Clark v. Resistoflex Co.,* 665 F.Supp. 1216, 1218–19 (M.D.La.1987), the court held that the date of the last act of discrimination was the date that the employee was told he was going to be fired. The company's deci-sion to allow the employee to work until the following Friday did not extend the deadline. *Id.* The employee *knew* he would be terminated prior to his last day at work. *Id.* Thus, the last day of employment is not necessarily the date of the last act of discrimination. In *Price v. Litton Business Systems, Inc.,* 694 F.2d 963, 965 (4th Cir.1982), the Fourth Circuit held that the date of the decision to terminate the employee begins the 180–day time period to file with the EEOC. *Id.* The employee *knew* on the date of the decision that he would be terminated. *Id.*

However, unlike those employees who were terminated but allowed to continue to work for a brief time, appellant was following appellees' procedures in taking time off to recover from the consequences of appellees' alleged age discrimination. Appellant states that she intended to return to work until they terminated her. Appellant's complaint to the EEOC states:

> Defendants' course of conduct continued after March 28, 1991 as reflected by their violation of their own policies. It was announced that I had been replaced on or about May 13, 1991, or not more than six weeks after I started on medical leave (April 8, 1991). Even though the company Leave of Absence Policy was that within the first 8 weeks after the commencement of leave, I would be assured of the same or similar job at my last rate of pay.... While on medical leave, I continued to hope that I was going to be able to resume my previous job when I recovered my health and only finally realized and accepted what they had done to me when they actually terminated me on April 6, 1992.

Appellant appears to have tried to avoid litigation by taking a leave of absence to recover. When appellant left work in 1991, appellees told her she would be terminated if she did not return to work in one year. The decision, however, was not definite because it was based on appellant's physical and mental limitations. Appellant did not believe she was terminated but anticipated that she could return within a year.

The facts of this case are also readily distinguishable from *Ridgway's, Inc. v.*

*Payne,* 853 S.W.2d 659, 663 (Tex.App.—Houston [14th Dist.] 1993, no writ), relied upon extensively by appellees. Ridgway's implemented a clearly discriminatory policy that cut life insurance benefits for those over age 65. *Id.* The policy was enacted in 1986. *Id.* Payne died in 1989 and his descendants learned they would receive a smaller amount when they tried to collect the proceeds. The descendants then attempted to sue for age discrimination. *Id.* This court found that the act of discrimination was implementing the policy in 1986 and that the claim was barred by the 180 day filing requirement. *Id.* This court determined that the smaller benefits paid were a consequence of the discrimination, and the act of discrimination was complete in 1986 when the policy was implemented. *Id.* *Ridgway's* is easily distinguishable because appellant fully intended to return to work up until the date she was terminated. Prior to the date upon which she determined that she could not return, she could not have known that the prior pattern of discrimination would cost her job. If appellant had complained that appellees' conduct caused her to lose her job prior to the actual termination, appellees would have certainly claimed that appellant had filed suit prematurely. Appellee's final act of age discrimination was terminating appellant in 1992. Because appellee's final act of age discrimination was terminating appellant in May 1992, appellant timely filed her complaint on June 2, 1992, within 180 days of the last discriminatory act.

Further, even if we cannot conclusively state that the last act was in April or May 1992 as a matter of law, appellant has presented sufficient evidence to show that there is at least some evidence that the decision to terminate was an act of discrimination. The trial court erred in its analysis by holding as a matter of law that the act of termination was a consequence or effect of discrimination instead of an act of discrimination. Therefore, appellant's claims are not barred by the statute of limitation as a matter of law. We reverse trial court's order granting summary judgment on appellant's claim for age discrimination against appellees, Speciality Retailers, Inc., Three Beall Brothers 3, Inc. and Palais Royal, Inc.

Supervisors and managers, however, are not liable under the Texas Human Rights Act in their individual capacity for their alleged acts of discrimination. *Bushell v. Dean,* 781 S.W.2d 652, 657 (Tex.App.—Austin 1989), *rev'd on other grounds,* 803 S.W.2d 711 (Tex.1991). Because appellant cannot maintain a cause of action against Susan Bee, individually, we affirm the summary judgment on appellant's claims for age discrimination against appellee, Susan Bee.

In her third and fourth points of error, appellant contends the trial court erred in granting summary judgment for appellees on her claims of intentional infliction of emotional distress. Appellant claims that there were questions of material fact as to whether Bee's conduct rose to the level of intentional infliction of emotional distress. To show intentional infliction of emotional distress, appellant must show: (1) the Defendant acted intentionally or recklessly, (2) the conduct was "extreme and outrageous," (3) the actions of the Defendant caused the Plaintiff emotional distress, (4) the resulting emotional distress was severe. *Twyman v. Twyman,* 855 S.W.2d 619, 621 (Tex.1993). Even if Bee were a poor supervisor, her conduct was not "extreme and outrageous." As stated by the Texas Supreme Court in *Wornick v. Casas,* 856 S.W.2d 732 (Tex.1993):

> "[T]ermination of an employee is never pleasant, especially for the employee. If we accept Casas' arguments in this case employers would be subjected to potential jury trial in connection with virtually every discharge, and there would be little left of the employment at-will doctrine." *Id.* at 735–36.

Based on the evidence presented that Bee was late for meetings, forced appellant to work "after hours," changed deadlines and requirements during projects and told appellant that she needed to be "more fashion forward," the trial court correctly concluded that Bee's conduct was not "extreme and outrageous" as a matter of law. Further, appellant failed to show a valid claim for intentional infliction of emotional distress against the corporate defendant because she failed to show "extreme and outrageous" be-

havior by corporations or their employee. Without some evidence to raise a fact issue to show "extreme and outrageous" conduct, the trial court properly granted summary judgment on all claims of intentional infliction of emotional distress. We affirm the trial court's summary judgment on appellant's claim of intentional infliction of emotional distress against all appellees.

In conclusion, we affirm the trial court's summary judgment on all intentional infliction of emotional distress claims and age discrimination claims against Susan Bee. We reverse and remand the age discrimination claims against Speciality Retailers, Inc., Three Beall Brothers 3, Inc., and Palais Royal, Inc.